ROGERS, J.
 

 Deféndant appeals from a conviction and sentence for manslaughter under an indictment for murder. Two bills of exception are relied upon to secure a reversal.
 

 The first bill of exception was reserved to the admission of an alleged dying declaration made by the deceased. Defendant’s contention is that this evidence was erroneously admitted, for the reason that the state had not proved that the deceased had made the declaration while under a sense of impending death, and after having abandoned all hope and expectation of recovery.
 

 The state sought to prove the alleged dying declaration by the testimony of Dr. W. P. Bond, the attending physician, which testimony was reduced to writing for the purpose of forming the basis of the bill of exception.
 

 The testimony of the witness shows, that, accompanied by J. W. Owens, he went into the tent in which deceased lay mortally wounded from a shotgun wound on the left side in the lower part of the bowels; that he considered the wound fatal; that he remarked to Owens, who was standing alongside of him, beside the bed upon which decedent lay, that “there was no chance for him,” referring to the decedent; that the said statément was made in the presence and hearing of the decedent, who was rational at the time; that about 30 minutes thereafter, decedent said to the defendant and another woman named Bert, “Good-bye; they say I have got to go”; that, while the defendant and the woman, Bert, were present, the decedent made the further statement to said women, “Good-bye; they say I have got to die. Make the best of it you can.” The evidence shows that in addition to the- witness and Owens, the sheriff and two other men were present when the latter statement was made.
 

 The testimony of Dr. Bond further shows that the decedent said to him, after he had made the foregoing statements, that “Minerva Boyd, his wife, shot him,” and that she had shot him with a shotgun.
 

 The court, in its per curiam, states that the witness testified the decedent’s bowels were shot into or severed in several places, and were hanging from his body, and that the victim of the shooting died about 9 o’clock the following day.
 

 We do not think the district judge erred in admitting the statements testified to as constituting a dying declaration. It is not necessary, as contended by counsel for defendant, that the declarant should in express terms state that he was going to die immediately in order to furnish a condition precedent for the validity of his declaration as evidence. It is sufficient if his belief of speedy dissolution or approaching death be established by his actions and the surrounding circumstances, however long he may survive. State v. Spencer, 30 La. Ann. 362; State v. Daniel, 31 La. Ann. 91; State v. Keenan, 38 La. Ann. 660; State v. Jones, 38 La. Ann. 792; State v. Newhouse, 39 La. Ann. 862, 2 So. 799; State v. Brown, 111 La. 696, 35 So. 818; Wharton, Crim. Ev. (10th Ed.), vol. 1, §§ 282, 284.
 

 It is clear that the dying man, appreciating his condition, and having overheard the statement made by the attending physician to Owens, was conscious of his impending death. This is shown by the use of the word “they” in connection with his farewell to his wife, the defendant herein, and the woman, Bert, the declaration “that he had to go,” and the admonition to them to “make the best of it you can.”
 

 
 *857
 
 The second bill of exception was reserved to the action of the district judge in overruling defendant’s motion for a new trial. This motion was based upon the grounds set forth in bill of exception No. 1, which we have disposed of in our discussion of said bill, and upon the further ground that, after Dr. Bond had given his testimony, J. W. Owens, a witness for the state, while being questioned with a view of proving a dying declaration made by the deceased, testified that the deceased asked him:
 

 “Ain’t you going to do something for me? You heard what the doctor said.”
 

 It is contended on behalf of defendant that this statement by the deceased showed that he still held out hope for his life. We do not so construe it. On the contrary, we think the statement is corroboration of the deceased’s belief of impending death. His bowels were shot into or severed in several places and were hanging from his body. He undoubtedly suffered great pain. Dr. Bond, when asked if he had discussed with the deceased the seriousness of his wound, said, “I didn’t discuss it with him directly, but I told Mr. Owens the only thing we could do would be to give him relief.” This statement was made in the presence of the deceased, whose entreaty to the witness, Owens, was evidently for the purpose of obtaining some relief from the great pain with which he was suffering, and not with the hope of recovery.
 

 We do not find any error in the ruling of the district judge in refusing defendant’s motion for a new trial.
 

 The legal principles announced in the cases of State v. Gianfala, 113 Da. 464, 37 So. 30, and State v. Daniels, 115 Da. 59, 38 So. 894, cited by counsel for defendant, are inapplicable to the questions involved in the instant case.
 

 The verdict and sentence appealed from are affirmed.