(110 So. 888)

No. 28035.

## STATE v. ROBERTSON.

(Nov. 29, 1926. Rehearing Denied Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. Homicide ⬤204—Intervention of approximately three months between wound and making of dying declaration did not affect its admissibility.

Intervention of approximately three months between inflicting of wound, resulting in death, and making of dying declaration, in no manner affected admissibility of declaration.

2. Homicide ⬤204—Dying declaration was not inadmissible because made nearly two months before death, if made at time when deceased believed death was impending.

Fact that dying declaration was made nearly two months before death ensued does not render declaration inadmissible, if made at time that deceased believed that death was impending, and entertained no hope of recovery.

3. Homicide ⬤203(5)—Dying declaration is not rendered incompetent because deceased on day following entertained hope of recovery.

Where deceased, at time of making dying declaration, entertained no hope of recovery, but on following day did entertain some hope, declaration would not be rendered incompetent thereby.

4. Homicide ⬤204—Dying declaration is not rendered incompetent by subsequent temporary revival of dying person.

Dying declaration, which is competent evidence when made, will not be rendered incompetent by subsequent, temporary revival of dying person, or by fact that she afterwards entertained some hope of recovery.

5. Criminal law ⬤1159(2)—Sufficiency of evidence to establish guilt is not within Supreme Court's jurisdiction.

Sufficiency of evidence to establish defendant's guilt of manslaughter is not within Supreme Court's jurisdiction.

6. Criminal law ⬤1124(3)—Error cannot be imputed to overruling motion for new trial on ground of erroneously admitting dying declaration, in absence of all evidence.

In absence of all evidence relating to admissibility of dying declaration, Supreme Court cannot say that trial court erred in refusing motion for new trial on ground of error in admitting such declaration.

Appeal from Nineteenth Judicial District Court, Parish of East Baton Rouge; W. Carruth Jones, Judge.

Edward G. Robertson was convicted of manslaughter, and he appeals. Affirmed.

R. F. Walker, of Baton Rouge, for appellant.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., John Fred Odom, Dist. Atty., of Baton Rouge (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

OVERTON, J. Defendant was indicted for the murder of Florence Anderson, and upon his trial was found guilty of manslaughter, and was later sentenced to not less than 10, nor more than 14, years in the penitentiary. He now prosecutes this appeal from the sentence imposed, and relies upon two bills of exception for a reversal.

The record discloses that the state, during the trial of the case, offered to prove a statement, made by the deceased, as a dying declaration. This offer was objected to by defendant, first, upon the ground that the date on which the declaration was made was too remote from the date on which the wound was inflicted, and also from the date on which the death of the deceased occurred, to make the declaration admissible as a dying declaration, and, secondly, upon the ground that, on the day following the making of the declaration, the deceased, acting upon her own desire, and also upon the request of her mother, sent for a physician, and was treated by him, thereby showing that she had not lost hope of recovery. These objections were overruled after the introduction of evidence to lay the foundation for the admission of the declaration.

The evidence introduced to lay the foundation for the introduction of the dying declara-

tion was not reduced to writing, and therefore is not before us in the words that came from the mouths of the witnesses. However, the trial judge has attached his per curiam to the bill reserved. He states that the deceased was stabbed by the accused on October 19, 1925; that she immediately thereafter went into a gradual decline; that on January 20, 1926, she made the dying declaration in question, and died on March 16th of that year. He also states that the evidence showed that at the time the declaration was made the deceased was in an extremely critical condition; that she could scarcely speak above a whisper, and had abandoned all hope of recovery, stating that she was going to die, and had no chance to get well. He also states that he was of the opinion that the deceased believed, at the time of her dying declaration, that she was approaching dissolution, and was under a sense of impending death, with no hope of recovery.

[1] The fact that approximately three months intervened between the infliction of the wound, which resulted in the death of the deceased, and the making of the dying declaration, in no manner affects the admissibility of the declaration. The admissibility of such declarations is not controlled by the lapse of time that intervened between the infliction of the wound, at least where, as in this case, the wound resulted in the death of the deceased within a year and a day after it was inflicted, but by the fact whether the deceased, when she made the declaration, believed, as stated in effect, in State v. Newhouse, 39 La. Ann. 862, 2 So. 799, that death was impending, and entertained no hope of recovery. This state of mind might exist in one three months after the infliction of a wound, resulting in death, as well as an hour or a day after such infliction.

Perhaps a more serious question than the one considered is the time, which was nearly two months, which intervened between the making of the declaration and the death of the deceased. In 30 C. J. § 497, p. 254, it is said in this connection, that—

"Unsworn statements can be admitted in evidence as dying declarations only when made in extremis, but the admissibility of evidence of this character does not depend upon the length of the interval between the declaration and the death, but on the state of the declarant's mind and his belief that he is in a dying condition. The length of time elapsing between the making of the declarations and the declarant's death is, however, one of the elements to be considered in determining whether the declarations were made under a sense of impending death. * * * *"

In State v. Daniel, 31 La. Ann. 91, 95, it was said by this court that—

"It matters little that, after making his declaration, the wounded party survived several days. Howsoever long he may have survived, was the reported declaration made under the belief of approaching dissolution, under a sense of impending death, when the heart is justly presumed to be free from anger, hatred, and falsehood? That is the only test, one which involves a question of fact."

In State v. Sadler, 51 La. Ann. 1397, 1412, 26 So. 390, 396, this court, in passing upon the admissibility of a dying declaration, made three days before the death of the deceased, said, on the first hearing of the case, the ruling on that declaration being adhered to on the second hearing, that—

"The general rule is thus stated, viz.: 'The declarant, to render his declarations admissible, must have uttered them under the sense of impending dissolution, and with a consciousness of the awful occasion, though the principle is not affected by the fact that death did not ensue until a considerable time after the declarations were made,' etc. [citing] Whart. Cr. Ev. § 281."

In State v. Brown, 111 La. 696, 35 So. 818, this court, in passing on the question whether a dying declaration made more than 24 hours before death ensued was admissible, said:

"The mere fact that the party making the declaration lived for some time after having

made it does not withdraw from it its original character as a dying declaration."

In Fulcher v. State, 28 Tex. App. 465, 13 S. W. 750, a dying declaration was held not to be inadmissible, because made a month and a half before death ensued. In Boulden v. State, 102 Ala. 78, 15 So. 341, a like ruling was made where the declaration was made two months before death; and in State v. Craine, 120 N. C. 601, 27 S. E. 72, a ruling to the same effect was made in a case in which the declaration was uttered five months before death ensued.

[2] Based upon the foregoing, our conclusion is that the mere fact that the declaration was made nearly two months before death ensued, if made at a time when the deceased believed that death was impending, and when she entertained no hope of recovery, does not render the declaration inadmissible. And since the trial judge advises us that the evidence showed that the deceased, at the time of her dying declaration, believed that she was approaching dissolution, and was under a sense of impending death, with no hope of recovery, and since there is nothing in the record to show that the trial judge was in error in his finding of facts, our conclusion is that the bill, in so far as it relates to the first objection urged, should be overruled.

[3, 4] As relates to the second objection made to the dying declaration, the record does not disclose whether, as stated in the objection, the deceased, of her own desire, and upon the request of her mother, on the day following the making of the declaration, sent for a physician, and was treated by him, thereby showing, as contended, that she had not lost hope of recovery. Granting, however, that, on the day following the declaration, she did send for a physician, who treated her, still, while such a circumstance may have a tendency to show that she had some hope of recovery when the declaration was made, it by no means follows that she did have. She might have had, as not infrequently occurs, no hope whatever when the declaration was made, and yet on the following day, for some reason, have entertained hope of getting well. If she entertained no hope whatever at the time of making the declaration, but on the following day did entertain some hope, this would not render the declaration incompetent; the rule being that "a declaration, which is competent evidence when made, will not be rendered incompetent by a subsequent temporary revival of the dying person, or by the fact that he afterwards entertained some hope of recovery." 30 C. J. § 499, p. 257. In the absence from the record of the evidence upon which the judge acted when he ruled, we are in no position to say that the circumstance mentioned, when taken in connection with all the remaining evidence, shows that the judge was in error in finding and stating that the deceased was without hope of recovery when the declaration was made. State v. Brown, 111 La. 696, 35 So. 818. We may here say that we find nothing in conflict between the views expressed by us on this bill and the case of State v. Gianfala, 113 La. 463, 37 So. 30, nor between them and the rest of the authorities cited by defendant.

The remaining bill of exception was taken to the overruling of a motion for a new trial. Defendant contends in the motion that the judge erred in admitting the dying declaration, considered above. He also contends that the evidence showed that the wound inflicted did not cause the death of the deceased, but showed that she died of tuberculosis. The trial judge, in his statement attached to the bill, says that—

"The court was convinced by the evidence that the accused had been proven guilty beyond a reasonable doubt by competent testimony, and therefore refused the new trial."

[5, 6] So far as the bill relates to the sufficiency of the evidence to establish that the

defendant was guilty of manslaughter, the question presented by it is not within our jurisdiction. So far as the cause of death may affect the admissibility of the dying declaration, all of the evidence relating to the cause of death has not been brought to this court, and hence we are in no position to say that the judge erred in refusing the motion on that ground. In fact, his per curiam attached to the bill, and quoted above, impliedly means, among other things, that the evidence showed that the deceased died as a result of the wound.

For the reasons assigned, the judgment appealed from is affirmed.